**COMMUNITY BANK, Plaintiff,**

v.

**NEWMARK & LEWIS, INC., Defendant.**

**No. 78 CV 2517.**

United States District Court,
E. D. New York.

March 4, 1982.

*Some First Amendment Problems*, 47 *Indiana Law Journal* 1 (1971).

**20.** *See* nn. 10–19 and accompanying text *supra*.

Zimmer, Fishbach & Hertan by Robert M. Trien, Richard W. Schleifer, New York City, for plaintiff.

Speno, Goldberg, Moore, Margules & Corcoran by Robert W. Corcoran, Paul F. Corcoran, Mineola, for defendant.

## MEMORANDUM AND ORDER

NEAHER, District Judge.

Plaintiff, a California banking corporation, brought this diversity action to recover account receivables totaling $126,969.60 plus interest, allegedly owed by defendant Newmark & Lewis ("Newmark") to Jennings Research, Inc. ("Jennings") for hi-fidelity electronic components and related equipment Newmark allegedly ordered and received during 1977. Plaintiff claims it was authorized to collect the Newmark receivables, represented by Jennings invoices, pursuant to a security agreement in reliance on which it made loans to Jennings on which Jennings has defaulted. The complaint bases recovery on two theories—contract and an account stated. Plaintiff has moved for partial summary judgment to collect receivables totaling $28,826, plus interest, the face amount of four invoices for goods defendant admits it received plus the allegedly agreed upon price ($2,880) for additional equipment described in a fifth invoice not made part of the complaint.

The principal dispute between the parties is whether defendant is liable upon the invoices as charged, or whether any genuine issues of material fact requiring trial have been raised as to Newmark's affirmative defense that the invoices plaintiff relies on actually evidence purchases Newmark made as part of an overall oral sales and merchandising agreement between it and Jennings, and as to defendant's further contentions that this underlying contract was breached and thus diminishes plaintiff's recovery. For the reasons that follow, the Court concludes that evidence as to the alleged oral agreement is inadmissible be-

cause of the parol evidence rule, N.Y.U.C.C. § 2–202 (McKinney's),[1] and that plaintiff is entitled to a partial summary judgment in the amount sought on this motion.

The four invoices on which plaintiff relies all relate to a single purchase order of Newmark, No. 5880. The earliest invoice, No. 4688, Compl. Exh. A–1, is dated 8/18/77 and bears "7–06–24" as the "work order no." and "bill of lading no." Three additional items are typed onto this invoice beneath the six which appear in bold face type on every Jennings invoice in suit. For two of these added items, the "11–11–00 vector two-b," and the "11–13–00 tower," the "quantity ordered"—30—is stated as "back ordered," and the price does not appear in the total invoice amount. Two subsequent invoices, No. 4701, dated 8/30/77, and No. 4730, dated 9/9/77, Compl. Exhs. A–5, A–6, bear "7–06–024 BO [or B/O]" as their work order and bill of lading numbers, and describe shipments of 30 each of the "11–13–00 tower" and the "11–11–00 two B."

The fourth invoice, No. 4732, dated 9/9/77, Compl. Exh. A–4 and bearing "7–06–23 BO" as the work order and bill of lading numbers, concerns a shipment of 40 "11–10–00 Bector two B" [sic], at a unit price of $140 for a total invoice price of $5,600. On this invoice there also appears a round stamp bearing the date "Sept. 12 1977" with the letters "N" and "D" next to each other above the date, and "C" below it. The stamp also is written through with a signature or initialing. Jennings invoice No. 4599, dated 7/20/77, bears "7–06–24" as the work order and bill of lading numbers, and shows a quantity of 40 "11–10–00 vector two B" being ordered and shipped, at the unit price of $140 for a total of $5,600 which is included in the total invoice amount of $22,788. Invoice No. 4599, however, is not at issue on this motion, defendant having denied receipt of the goods covered by it.

---

1. The parties have not disputed that New York law applies to the transactions between New-

mark and Jennings.

The invoices, of course, vary as to the type, quantity and price of the items involved, and therefore as to the total invoice amounts. In other respects, however, they are identical. Each states its "terms" as "20% 30 days + 3% 10 days." A declaration appearing in a separate ruled box below the invoice's descriptions, terms and prices, permits the buyer to "Deduct Prompt Payment Discount" in an amount that for each invoice works out to 20% of the total invoice amount, "If Paid By" a date that is 30 days from the date of the invoice.

Directly beneath the prompt payment discount declaration appears the following: "Acceptance of merchandise covered by this invoice represents buyer's agreement to meet current terms and conditions of sale under which the order was entered. Title passes from seller to buyer upon seller's delivery to carrier. All claims for damage in transit must be made at once by buyer directly with local carrier. Merchandise may only be returned for credit upon receipt by the buyer or prior authorization in writing signed by a responsible official of the seller."
Outside the ruled box that contains all the above invoice information appears this directive: "Pay from This Invoice—No Statement Will Be Submitted."

Printed at the foot of the invoices relied on, inside a black, white-dotted border, is a blank "Jennings Research Inc. RETAIL ADVERTISING VOUCHER." Its terms permit 10% of the net billing on an invoice to be accrued as advertising credits, chargeable against the specific invoice for a stated period of time. On each invoice involved on this motion, however, there appears at the top of this voucher the typed word "VOID."

Defendant has admitted that it received the goods covered by these invoices; and records produced through discovery show that it recorded their face amounts on its accounts payable ledger, without deduction or credit, as amounts owing and unpaid. It seeks to avoid full liability, however, by an affirmative defense that the contract sued upon, and the one actually evidenced by the invoices at issue, is an oral agreement reached through discussions held on January 31, 1977, principally between Jennings' president, Thomas Jennings, and Barry Diamond, an audio buyer for Allbrand Appliances & Television Co. ("Allbrand"). There is no genuine issue that the latter was acting that day on behalf of both Allbrand and Newmark. Also present at the meeting was Joseph H. Thal, a principal of J. H. Thal Associates, then engaged as sales agents representing manufacturers and distributors of electronic and audio equipment, including Jennings.

Diamond, whose account of the meeting is adopted by Newmark's own audio buyer, Edward Ferri, and is corroborated by Thal's affidavit, affirmed that Jennings' president, in order to induce Newmark and Allbrand to merchandise Jennings hi-fi equipment, represented to the Newmark and Allbrand representatives that his company could annually produce and deliver to the two retail merchandisers electronic goods and equipment worth one million dollars wholesale. According to Diamond, Jennings also promised that the company would supply Newmark and Allbrand with a "market development fund," apparently to consist of "free" audio equipment with a market value of $100,000. Forty percent of this fund, also called "key city money," was to be made available in the first six months of 1977 and the remainder in the second half. In addition, Diamond affirms that Jennings promised to give Newmark and Allbrand a 20% discount on all invoices, whenever paid, and additional discounts of 10% for "advertising accrual" and 3% for prompt payment. Newmark contends further that Jennings warranted its goods for five years as part of the agreement, although the affidavits do not specifically aver that warranty matters were discussed at the January meeting.

Allegedly Newmark relied on these representations and undertook to promote and sell Jennings equipment, even to the exclusion of other manufacturers' equipment. Newmark claims, however, that Jennings breached its part of the agreement because it did not make prompt delivery of the

goods Newmark ordered, did not provide the "free goods" for the market development fund, delivered defective goods and then went out of business in late 1977, preventing fulfillment of its warranty obligations.

Plaintiff has submitted no affidavits to dispute Newmark's factual contentions. Instead, it seeks to deny them legal effect by invoking the parol evidence rule and statute of frauds, contained in N.Y.U.C.C. §§ 2–202, 2–201. The parol evidence rule applicable to contracts for the sale of goods over $500 provides as follows:

"Terms with respect to which the confirmatory memoranda of the parties agree or which are otherwise set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement but may be explained or supplemented

"(a) by course of dealing or usage of trade (§ 1–205) or by course of performance; and

"(b) by evidence of consistent additional terms unless the court finds the writing to have been intended also as a complete and exclusive statement of the agreement."

On the present record, there is no genuine question of fact that the parties intended each sales invoice to be a "final expression of their agreement with respect to" the terms contained on the invoices, although defendant disputes this. Each invoice states that "acceptance of merchandise covered by this invoice represents buyer's agreement to meet current terms and conditions of sale under which the order was entered." Defendant admits it received the goods covered by the invoices, and it posted the face amount of the invoices to its accounts payable. Conversely, it has not produced any evidence that the underlying purchase order No. 5880 proposed different terms, or that it timely objected to the terms set forth in the invoices. See N.Y.U.C.C. § 2–201(2).

Confronted with facially valid contracts, defendant seeks to "explain or supplement" the invoice terms by reference to the oral agreement. But in arguing that the true obligation by which it was bound was the oral agreement, Newmark has demonstrated only that the terms it urges are controlling do not "supplement or explain" the invoices but in fact "contradict" them. The 10% advertising discount defendant seeks contradicts the "VOID" typed on each Jennings Retail Advertising Voucher. The 3% prompt payment discount and 20% discount on each invoice, whenever paid, contradict the express terms of a 20% prompt payment discount for payment within 30 days and an additional 3% for payment in 10 days. Lastly, the contention that the goods are "free goods" for the market development fund directly contradicts the entire price term.

In these circumstances, it is plain that evidence as to the purported agreements of January 31, 1977 is inadmissible. See, *e.g., Eisert v. Ermco Erectors, Inc.,* 60 A.D.2d 903, 401 N.Y.S.2d 553 (2d Dept. 1978), where the Appellate Division reversed the trial court for denying plaintiff a judgment in the full amount of the total monthly rentals for its equipment. The defendants there had contended that over the years plaintiff had consistently given discounts from the monthly rental price stated in the agreements. Nevertheless, the court ruled that

"to permit discounts to be granted on this record would require complete disregard of the parol evidence rule set forth in section 2–202 of the Uniform Commercial Code. Whatever the course of conduct between the parties may have been with respect to rental agreements prior to those involved herein, it may not be used to contradict the terms assumed by the parties under the disputed agreements, especially as to so vital an item as the price."

401 N.Y.S.2d at 555 (citation omitted). Accord, *Philipp Brothers Division of Englehard Minerals & Chemicals Corp. v. El Salto, S.A.,* 487 F.Supp. 91, 94 (S.D.N.Y.1980); *Whirlpool Corp. v. Regis Leasing Corp.,* 29

A.D.2d 395, 288 N.Y.S.2d 337, 339–40 (1st Dept. 1968).

 Defendant's further contention that plaintiff is without standing to sue on some of the invoices involved on this motion because it lacks a formal assignment of them, is without merit. As permitted by the California Uniform Commercial Code, see § 9–204, plaintiff acquired a security interest through its security agreement with Jennings, "in all accounts, accounts receivable, contract rights and general intangibles" of Jennings "now existing or hereafter arising," and not merely the specific accounts on which plaintiff loaned Jennings money. On Jennings' default, which is undisputed, plaintiff obtained the right to proceed against Newmark as the "account debtor" on the accounts represented by the invoices. See UCC § 9–502(1).

Accordingly, the Clerk is directed to enter partial summary judgment in favor of plaintiff in the amount of $25,945, plus interest.[2]

SO ORDERED.

---

**2.** This amount is only for the four invoices covering equipment that defendant in its answer admitted having received. No allowance in defendant's favor has been made for the credits that appear on the ledger sheets plaintiff has introduced, nor has the recovery been augmented by the $2,880 face amount of invoice No. 4707, which covers goods defendant has not admitted it received. The present record does not permit a summary adjudication of these issues.